IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:24-CV-536

| | | |
|---|---|---|
| VICTORIA LEMRABOTT,<br><br>Plaintiff,<br><br>v.<br><br>MCKEE HOMES, LLC, and<br>MCKEE HOMES REALTY, LLC,<br><br>Defendants. | ) | **ORDER** |

This cause comes before the Court on defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56(a) [DE 24]. Defendants filed the requisite statement of material facts [DE 26]. Plaintiff filed a response [DE 30] and her own statement of material facts [DE 32]. Defendants replied [DE 33] and filed another statement of material facts [DE 34]. At this time, defendants' motion for summary judgment is ripe for disposition. For the following reasons, the motion is DENIED IN PART and GRANTED IN PART [DE 24].

## I. BACKGROUND

On September 18, 2024, plaintiff initiated this action by filing the complaint in this Court [DE 1]. The complaint alleged violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, the Americans with Disabilities Act of 1990 as amended in 2008, the Family Medical Leave Act of 1993, the Fair Labor Standards Act as amended in 1938, and North Carolina public policy.[1] *Id.* On November 20, 2024, Defendant McKee Homes Realty, LLC, filed an answer [DE 6]. On

[1] The plaintiff also alleged a violation of 42 U.S.C. § 1983 in the "preliminary statement" of the complaint, [DE 1] at 1, but did not proceed to plead a claim. Moreover, the parties abandoned any arguments regarding 42 U.S.C. § 1983 after the answers were filed. *See* [DE 32] at 1. Therefore, the Court considers this claim abandoned.

December 12, 2024, Defendant McKee Homes, LLC, filed an answer [DE 11]. On October 27, 2025, defendants jointly filed the instant motion for summary judgment [DE 24]. On December 12, 2025, this case was reassigned from Federal District Court Judge Louise Wood Flanagan to the undersigned. At this posture of summary judgment, the following facts appear to be undisputed unless otherwise indicated.

**A. Plaintiff's Employment**

McKee Homes, LLC ("McKee Homes" or "McKee"), is a residential homebuilder that has developed new construction communities in North Carolina regions including Fayetteville, Wilmington, and Pinehurst. At no time since its founding has McKee Homes employed 50 or more employees within a 75-mile radius of any worksite.[2] During plaintiff's employment, McKee Homes employed between 56 and 76 individuals in total across all of McKee Homes' communities throughout North Carolina, including in its corporate office in Raleigh.[3]

Plaintiff is a black woman. Plaintiff worked for McKee Homes from February 3, 2020, to November 28, 2022. She became employed as a New Home Advisor. Prior to joining McKee Homes, plaintiff had no professional real-estate experience. As a New Home Advisor, plaintiff trained to become a New Homes Sales Consultant ("NHSC") by assisting NHSCs that were showing homes, advertising, and bringing potential buyers to McKee Homes communities. At all times during her employment, plaintiff's manager was Billy Howell.

On August 8, 2020, after approximately six months as a New Home Advisor, McKee Homes promoted plaintiff to NHSC, and she remained in that position for the remainder of her

---

[2] Many times throughout plaintiff's response to defendants' statement of material facts [DE 30-2], plaintiff "disputes" defendants' statements in a conclusory manner but offers no opposing evidence. Pursuant to Local Civil Rule 56.1(a)(4), "Each statement by the . . . the opponent . . . must be followed by citation to evidence that would be admissible . . . . Citations shall identify with specificity the relevant page and paragraph or line number of the evidence cited." Accordingly, where plaintiff "disputes" a statement of fact, but offers no evidence to the contrary, the Court deems defendants' statement of fact as undisputed.
[3] Plaintiff disputes with no evidence. *See* Local Civil Rule 56.1(a)(4).

employment. As an NHSC, plaintiff became solely responsible for the sales in her assigned communities.

McKee Homes paid plaintiff on a commission basis for each home sold—at a rate of 1.25% payable after successful closings. The parties dispute whether McKee Homes set plaintiff's commission rate based on her race.

The NHSCs, including plaintiff, were required to sign NHSC Compensation Plans as a condition of their role. On February 10, 2022, plaintiff signed the 2022 NHSC Compensation Plan. The 2022 NHSC Compensation Plan provided that "[i]f employment with McKee Homes is terminated involuntarily, any commissions due on sales pending Close of Escrow after NHSC termination date will be forfeited."

McKee Homes assigned Plaintiff to sell homes in various McKee Homes communities as an NHSC. Plaintiff lived in Fayetteville and applied for employment in the Fayetteville region. McKee assigned her to sell homes in four communities in and around Fayetteville. McKee Homes' communities in the Fayetteville area are generally priced lower than those in Raleigh and Wilmington. The parties dispute whether McKee Homes chose plaintiff's community assignments based on her race.

All NHSCs at McKee Homes are subject to monthly sales goals for homes within their assigned communities. Defendants provided plaintiff with an award for $4 million sold in the first quarter of 2022. On April 1, 2022, Defendants increased her commission rate to 1.5%. The parties dispute plaintiff's performance in sales for 2022.

**B. Plaintiff's Medical Issues**

In April 2022, plaintiff requested leave from April 21, 2022, to May 8, 2022, to undergo surgery for and recover from a benign but large tumor in her knee. McKee granted her request for

leave. Regarding her recovery period, McKee told plaintiff that it would be best if she worked from home during her recovery; otherwise, she would forfeit approximately $50,000 worth of expected commissions if she took FMLA or short-term disability leave. Thus, plaintiff worked from home on "light duty" while recovering from surgery. She was unable to take her pain medication during that time, as it affected her alertness. Defendants contend plaintiff's leave was classified as an unpaid personal leave of absence.[4]

On or about August 9, 2022, plaintiff sent a request for accommodations to Defendants' Human Resources representative, Brittany Benson ("Ms. Benson"), that included a 25-lb. weight restriction, wearing a brace while at work, no prolonged walking or standing, no jumping, no climbing ladders/stairs, and allowing seated breaks to elevate her knee as needed.

At some point in 2022, plaintiff began experiencing significant pain during the first and second day of her menstrual cycle—to the extent that she struggled to walk. Plaintiff notified her supervisor, Billy Howell, that she was experiencing "pain." Occasionally, plaintiff requested to take the day off because of her pain; other times, she used pain medication to "work through it."

When plaintiff saw a specialist in July or August of 2022, she was diagnosed with uterine fibroids. Plaintiff's doctor informed her that she needed to have a uterine tumor removed. Plaintiff wanted to schedule her surgery for 2023 due to her priorities at work, but her doctor recommended that she schedule the surgery as soon as possible.

Plaintiff alleges that at some point after she was diagnosed, Howell became aware that her "pain" occurred during her monthly cycle. [DE 27-6] Plaintiff's Dep. at pp. 139–140. Defendants dispute this. [DE 27-1] Howell's Dec. at 2–3.

---

[4] Plaintiff disputes with no evidence. *See* Local Civil Rule 56.1(a)(4).

On October 6, 2022, plaintiff texted Brittany Benson, McKee's Director of Human Resources, that she needed to have a "another tumor removed," but would not learn the surgery date until October 13. Plaintiff added, "I may need to use my short term disability, as it's considered a major surgery and will require minimum 3 weeks healing time."

On October 25, 2022, plaintiff emailed Ms. Benson about her scheduled surgery. Plaintiff reported the surgery would remove a "uterine tumor (large fibroid)," she would be "out of work at least 3 weeks," and she "would like to use [her] short term disability or FMLA, whichever [was] available for this type of situation." She added, "I have made Billy [Howell] aware and he is working on coverage for my communities while I am temporarily out of the office."

On November 2, 2022, Ms. Benson and plaintiff texted again. Ms. Benson communicated that laptop issues were preventing her from sending disability forms, and asked plaintiff for a doctor's note that explained the procedure and the days for leave. Plaintiff responded with a picture of an inpatient hospital authorization letter, which showed the dates of November 29 to December 6, 2022. Ms. Benson replied, "This should work for no[w]. . . !"

**C. The "Secret Shop" Evaluation**

To evaluate its NHSC performance, McKee contracts with Impact Marketing, which provides the "secret shopper" program. For this program, Impact Marketing employs individuals to pose as prospective homebuyers and engage in appointments with McKee's NHSCs. Each appointment with an NHSC is subsequently graded by Impact Marketing, using a scorecard that awards points for completed tasks. McKee Homes paused its use of the secret shop program from September 2020 through October 2022, but resumed in November of 2022.

Thus, on or about October 26, 2022—the day after plaintiff reported that she would like to take leave for her upcoming surgery—McKee scheduled a "secret shop" evaluation of plaintiff to

occur on November 8, 2022. On the day of the secret shop, McKee accepted an appointment with prospective homebuyers (the secret shoppers) scheduled for 3:30pm. At 2:00 p.m., McKee informed plaintiff that the customers (the secret shoppers) requested to move their appointment to the earlier slot of 2:30 p.m. Plaintiff elected to accept the change and keep the appointment, even though she was located too far away to arrive on time.

On her way to the appointment, plaintiff called the secret shoppers in the car. During that call, plaintiff asked questions that covered the Greeting, Discovery, and Presentation sections of Impact's scoring card. Eventually, plaintiff arrived late at the appointment. After learning the "buyers" were not represented by an agent, plaintiff suggested they be aggressive with their offer and ask McKee to include a fence for free.

Eventually, Impact evaluators viewed and scored a video recording of plaintiff's "secret shop." Because plaintiff covered the Greeting, Discovery, and Presentation sections on the phone—and thus, there was no video footage of those sections—plaintiff did not receive credit for them. The evaluators also deducted points for, among other things, plaintiff's tardiness and her suggestion that the buyers ask for free upgrades. (Plaintiff contends her suggestion was in accordance with McKee's practice of dealing with unrepresented buyers, but defendants submit that plaintiff's suggestion was against its interest.) [DE 32] at 10 ¶ 75. Plaintiff received a final score of 36/100.

McKee Homes relied on Impact Marketing's score as accurate.[5] After viewing plaintiff's scorecard and secret shop recording, a McKee executive named Ms. Sloan emailed Ms. Benson stating she wanted to proceed with plaintiff's termination.

---

[5] Plaintiff disputes with no evidence. *See* Local Civil Rule 56.1(a)(4).

On November 23, 2022, Ms. Sloan sent an email to Ms. Benson to proceed with plaintiff's termination. On November 28, 2022—the day before her scheduled surgery—McKee terminated plaintiff's employment by video meeting conducted by Mr. Howell and Ms. Benson.

## II. LEGAL STANDARD

A motion for summary judgment may not be granted unless there are no genuine issues of material fact for trial and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining whether a genuine issue of material fact exists for trial, a trial court views the evidence and the inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, "[t]he mere existence of a scintilla of evidence" supporting the nonmoving party's position is not sufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. A fact is material if it might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (internal quotation marks and citations omitted). Speculative or conclusory allegations will not suffice. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002).

"As a general rule, when one party files a motion for summary judgment, the non-movant cannot merely rely on matters pleaded in the complaint, but must, by factual affidavit or the like, respond to the motion." *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) (noting further that a verified complaint can be used as an affidavit opposing the motion for summary judgment as to allegations "based on personal knowledge."). Moreover, in this district, Local Civil Rule 56.1 requires that any motion for summary judgment must be supported by a separate statement of facts

which the movant contends are undisputed. Local Civil Rule 56.1(a)(1). The rule further requires that "[t]he memorandum opposing a motion for summary judgment shall be supported by a separate statement that includes a response to each numbered paragraph in the movant's statement" of material facts and that "[e]ach numbered paragraph in the movant's statement of material facts will be deemed admitted for purposes of the motion unless it is specifically controverted by a correspondingly numbered paragraph in the opposing statement." Local Civil Rule 56.1(a)(2).

## III. DISCUSSION

Defendants move for summary judgment on all plaintiff's claims. The Court addresses the claims in turn.

### A. Counts I & II – Discriminatory Compensation

First, plaintiff asserts claims for discriminatory compensation under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. Plaintiff alleges that McKee Homes compensated her at a lower value than similarly situated white employees because of her race. Plaintiff's total compensation was determined by both her commission rate and the price of the homes she was assigned to sell by McKee. The parties dispute whether McKee compensated and assigned NHSCs such as plaintiff based on race. This is a dispute of material fact that precludes a grant of summary judgment. Accordingly, summary judgment on these claims is denied.

### B. Counts III & IV – FMLA Interference and Retaliation

Second, plaintiff asserts a claim under the Family Medical Leave Act for unlawful interference and retaliation. Defendant moves for summary judgment on the basis that McKee Homes, LLC, is not subject to the requirements of the FMLA.

The FMLA only provides benefits and protections to eligible employees. An employee is not eligible if they are "any employee of an employer who is employed at a worksite at which such

employer employs less than 50 employees if the total number of employees employed by that employer within 75 miles of that worksite is less than 50." U.S.C. § 2611(2)(B)(ii). McKee Homes alleges it has never employed 50 or more employees within a 75-mile radius. Plaintiff does not contradict this fact. Therefore, plaintiff is not an eligible employee under the FMLA, and a grant of summary judgment to defendants is proper.

### C. Count V – ADA Failure to Accommodate

Third, plaintiff asserts a claim under the Americans with Disabilities Act for failure to accommodate.

To state a claim for failure to accommodate in violation of the ADA, a plaintiff must show "(1) that he was an individual who had a disability within the meaning of the statute; (2) that the employer had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position; and (4) that the employer refused to make such accommodations." *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir 2013) (cleaned up, citation omitted).

"Under the ADA, a disability is (among other things) an 'impairment that substantially limits one or more major life activities.' " *Tarquinio v. John Hopkins Univ. Applied Physics Lab*, 141 F.4th 568, 574 (4th Cir. 2025) (quoting 42 U.S.C. § 12102(1)(A)). The Fourth Circuit has clarified that "the ADA requires accommodating known limitations, not known disabilities. If an employee has a disability which causes limitations that interfere with work, and the employer knows it, then the employer must try to accommodate." *Id.* (cleaned up).

The parties do not dispute that plaintiff was an individual with a disability. However, they dispute whether plaintiff informed Mr. Howell and Ms. Benson about the limitations that plaintiff was experiencing. [DE 27-1] Howell Dec. at 2–3; [DE 27-6] Plaintiff's Dep. at pp. 139–142. This

is a dispute of material fact that precludes a grant of summary judgment. Accordingly, summary judgment on this claim is denied.

**D. Count VI – ADA Retaliation**

Fourth, plaintiff asserts a claim for retaliation under the Americans with Disabilities Act. Plaintiff alleges defendants terminated her employment in retaliation after she requested ADA leave. [DE 1] at 11.

"In order to prevail on a claim of retaliation, a plaintiff must either offer sufficient direct and indirect evidence of retaliation, or proceed under a burden-shifting method. A plaintiff need not show that she is disabled within the meaning of the ADA. Whether a plaintiff proceeds by direct evidence or *McDonnell Douglas* burden-shifting, she must show (i) that she engaged in protected activity and, (ii) because of this, (iii) her employer took an adverse employment action against her." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 577 (4th Cir. 2015) (citations and quotation marks omitted). "The employer then has the burden to rebut the presumption of retaliation by articulating a legitimate nonretaliatory reason n for its actions. The burden then shifts back to the plaintiff to show that the proffered reason is pretext. The plaintiff always bears the ultimate burden of persuading the trier of fact that she was the victim of retaliation." *Id.* at 578 (cleaned up).

On October 25, 2022, plaintiff requested leave to undergo and recover from a surgery scheduled to occur on November 29, 2022. On or about the next day, McKee ordered a secret shop evaluation of plaintiff and scheduled this secret shop to occur on November 8, 2022—before plaintiff's scheduled surgery. McKee terminated plaintiff's employment one day before plaintiff's surgery was scheduled to occur. The Court adjudges a genuine dispute of material fact exists as to causation for plaintiff's claim; therefore, summary judgment is denied.

### E. Count VII – Unpaid Commissions

Fifth, plaintiff asserts a claim for violation of the Fair Labor Standards Act ("FLSA"). Defendants contend plaintiff is exempt from the FLSA.

The FLSA is a "minimum wage/maximum hour law," *Monahan v. County of Chesterfield, Va.*, 95 F.3d 1263, 1266 (4th Cir. 1996), and its purpose is to remedy "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers[.]" 29 U.S.C. § 202. Certain types of employees are exempt from the FLSA. *See* 29 U.S.C. § 213 (2018). One such type is an employee employed in the capacity of an "outside salesman," *id.* at (a)(1), defined as any employee:

> (1) Whose primary duty is:
> (i) making sales within the meaning of section 3(k) of the Act, or
> (ii) obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; and
> (2) Who is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty.

29 C.F.R. § 541.500. "Sales" within the meaning of section 3(k) of the Act include transfer of title to tangible property.

It is undisputed that McKee Homes employed plaintiff as a sales consultant, whose primary duties were advertising and showing homes in McKee Homes communities to potential buyers in order to facilitate closings. [DE 30-2] at 4. It is clear from the evidence that plaintiff customarily and regularly engaged in that work. Accordingly, this Court finds that plaintiff was employed as an outside salesman, and as such, was exempt from the Fair Labor Standards Act. Therefore, the Court grants summary judgment to defendants on this claim.

### F. Count VIII – Wrongful Termination

Sixth, plaintiff asserts a claim for violation of North Carolina Public Policy, codified in N.C. Gen. Stat. § 143-422.2(a), which protects all persons from discrimination based on handicap

(among other bases). [DE 1] at 12. Defendants move for summary judgment on this claim, and plaintiff does not object. [DE 30] at 9.

### G. McKee Homes Realty, LLC

Last, defendant contends the court should grant summary judgment to McKee Homes Realty, LLC, on all claims because the plaintiff never worked for that company—she worked for McKee Homes, LLC. [DE 25] at 25. Plaintiff does not object. [DE 30] at 9.

## IV. CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment, [DE 24], is DENIED IN PART and GRANTED IN PART. The Court DENIES summary judgment to Defendant McKee Homes, LLC, on Counts I, II, V, and VI. The Court GRANTS summary judgment to Defendant McKee Homes, LLC, on Counts III, IV, VII, and VIII. The Court also GRANTS summary judgment to Defendant McKee Homes Realty, LLC, on all claims.

SO ORDERED, this 19 day of August, 2026.

Terrence Boyle

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE